

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable C. H. Cavness
State Auditor
Austin, Texas

Dear Sir:                          Opinion No. O-7141

                                   Re: Duties and powers of the
                                       Board of Pardons and
                                       Paroles.

        We beg to acknowledge receipt of your letter request-
ing an opinion upon the various matters therein mentioned, touch-
ing the above subject matter, which letter in part is as follows:

        "'In connection with an audit we are now making
of the books and records of the Board of Pardons and
Paroles, we find it necessary to request your opinion
on the following.

        "'There have been a number of Acts passed by the
Legislature, as well as the Constitutional amendment
in 1936. We have read the following but cannot clear-
ly see the answer to these questions, and we find
that the Members of the Board are also somewhat un-
certain as to just what laws cover their activities:
Articles 773, 775a, 807, 952, 953, 957, 959, 962 to
966 inclusive, 6166V, 6203, H. B. 390 R. S. 44th
Legislature, and the 'riders' on and the general
provisions of the appropriation Acts of the 46th,
47th and 48th Legislatures.

        "'1. What is the legal location of the Board
            of Pardons and Paroles?

        "'2. Does the Board of Pardons and Paroles have
            the power to remit fines and forfeitures
            (as for instance fines assessed for Game
            Law Violations) and to reinstate Driver's
            Licenses, etc? (The Board has been doing
            such but we are not sure as to authori-
            zation).

COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable C. H. Cavness, page 2

"'3. Who can legally obtain copies of prisoners' case histories and/or prison records from either the Texas Prison System or the Board of Pardons and Paroles, and what legal procedure must be followed to obtain same?

"'4. Who can legally contact prisoners confined in the Texas Prison System for interviews, etc., and what legal procedure should be followed?

"'5. Attached hereto are two forms - Proclamation for Clemency and Proclamation by Governor to Revoke Clemency - please advise us as to whether these forms are properly worded so as to meet all legal aspects of the governing laws now in effect.

"'6. The Board of Pardons and Paroles, and we, will appreciate it greatly if you will kindly specify all pardon and/or reprieve laws now in effect. It appears that some of those listed above have repealed some of the others and then in turn, perhaps have been changed (and we may not have found all of them). There is a definite need for a clarification by you as to just where everybody stands.'"

For convenience sake, we number the paragraphs of our answer in accordance with your questions.

1. There is nothing in the Constitution or the general statutes regulating the residence of the members of the Board of Pardons and Paroles except the eligibility requirement of the Constitution, providing that the members "shall have been resident citizens of the State of Texas for a period of not less than two years immediately preceding such appointment."--Constitution, Article IV, Section 11, as amended November 3, 1936.

The Legislature has provided in Ch. 292, H. B. No. 1076, Sec. 2, Regular Session 45th Legislature (1937) that:

"provided one member of the Board of Pardons and Paroles shall have his headquarters at Hunts-

Honorable C. H. Cavness, page 3

ville, and two members of said Board shall remain
in Austin, Texas, where the main office of the
Board of Pardons and Paroles is located, * * *."

The same provision was contained in Ch. 6, S. B. No.
427, Acts Regular Session 46th Legislature (1939). But these
were not general laws. On the contrary, they were the regular
appropriation Acts. It is well settled that only provisions,
riders and the like, germane to the specific appropriations
made may be incorporated in the appropriation bill. At all
events, these appropriation bills of long ago expired. The
corresponding appropriation bills for the biennium periods of
'41 and '43, respectively, do not contain such provision.

There is, therefore, no requirement of law fixing
the place of residence of the members of the Board of Pardons,
neither is there any provision fixing the place where the mem-
bers shall keep their principal office, hold their meetings and
hearings, or regulation in these respects whatsoever.

2. This question should be answered in the negative.
Sec. 11 of Article IV of the Constitution vests in the Governor
power to issue clemencies as follows:

"In all criminal cases except treason and
impeachment, the Governor shall have power, af-
ter conviction, on the written signed recommen-
dation and advice of the Board of Pardons and
Paroles, or a majority thereof, to grant re-
prieves and commutations of punishment and par-
dons; and under such rules as the Legislature
may prescribe, and upon the written recommenda-
tion and advice of the majority of the Board of
Pardons and Paroles, he shall have the power to
remit fines and forfeitures."

We are advised by the Board, however, that it has
never issued any proclamation, or made any order remitting
a fine or forfeiture, but has made recommendations with re-
spect thereto to the Governor.

3. Article 3720 of the Revised Civil Statutes says:

Honorable C. H. Cavness, page 4

> "Copies of the records and filed papers
> of all public officers and custodians of
> records of minutes of Boards, etc. and courts
> of this State, certified to under the hand
> and the seal, if there be one, of the lawful
> possessor of such records, shall be admitted
> as evidence in all cases where the records
> themselves would be admissible. * * *."

Moreover, it is a sound public policy that the records, minutes, papers and instruments contained in the files and archives of all public offices should be open to the inspection of any interested party, subject only to such privileges as the Legislature may in the interest of the same public policy declare, and subject further, of course, to the limitation that no inspection should be permitted that would interfere with the ordinary reasonable conduct of the affairs of the office or department.

We therefore answer this question as follows: Any person having an interest in the matter would have the right, upon demand, at any reasonable time, and in a reasonable way, to inspect such histories and records as you mention, and to have certified copies thereof, if the custodian is willing to supply them.

4. The Manager of the Prison System is vested with broad powers (Revised Civil Statutes, Vernon's Codification, Article 6166g) the Board being authorized to delegate to him authority to manage the affairs of the Prison System, subject to its control and supervision. This power extends to prescribing "reasonable rules and regulations governing the humane treatment, training and discipling of prisoners", and the like.

Article 6166z2, of the above statute, is even more informative at this point. It is as follows:

> "The Governor, and all members of the Executive
> and Judicial departments of the State and members of
> the Legislature shall be admitted into the prisons,
> camps and other places where prisoners are kept or
> worked, at all proper hours, for the purpose of observing the conduct thereof, and may hold conversation with the convicts apart from all prison offices.

Honorable C. H. Cavness, page 5

Other persons may visit the penitentiary under such rules and regulations as may be established." (Emphasis supplied).

In the very nature of things a strict surveillance of contracts between prisoners and outsiders must be fostered. You are advised, however, that persons having any business matters or affairs in which the prisoner is interested, or any person, representative or attorney having any interest in any pending or prospective litigation or proceedings in which the prisoner might impart valuable information, or any relative of the prisoner, or even friend, should have the right of visitation, under such reasonable rules and regulations as have been prescribed for the system.

For any denial of such right or privilege one's remedy would be by mandatory injunction, or other appropriate writ, instituted in a court of competent jurisdiction. Winfree v. May, 72 S. W. (2d) 357.

5. We have examined the forms submitted by you and approved them, with the following qualifications. One of these forms is, as we construe it, a form of proclamation used by the Governor when he, upon recommendation by the Board, grants a conditional pardon.

We believe the only objection that might be legally raised to this form of proclamation would be to that part which provides that upon its revocation the time during which the convict is at large under any previous clemency shall not be considered or credited to the said convict as time served on his original sentence. The validity of this provision depends upon the character or kind of clemency previously granted to the convict on the same sentence, which necessarily involves a question of fact. Therefore, this provision will have to be construed in the light of the facts in each particular case when the occasion therefor arises.

Further, the form of revocation submitted contains the following, "subject, however, to the right of the Governor to set aside this revocation at any time for any cause that the Governor may determine adequate."

Honorable C. H. Cavness, page 6

We know of no decision holding that the Governor would have the power to set aside a proclamation revoking a prior conditional pardon. The revocation by the Governor would operate as a full and final disposition of the question of clemency by the Governor, and leave the matter as though no such application had been made whatsoever. Moreover, we are advised by the Governor's office that it has not been his practice in any case to set aside a revocation previously issued but that he has treated the matter as one of original cognizance by the Board as upon an original application for clemency. The quoted language should be eliminated.

6. Your sixth request is so broad and so abstract that we will not, in the course of a legal opinion, undertake to compile the information called for. We shall be glad, however, to answer any specific question that may arise at any time.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

APPROVED MAY 9 1946

ASSISTANT
ATTORNEY GENERAL

CS:ddt

THE OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE